Submitted on remand from the Oregon Supreme Court March 1, vacated and
remanded May 8, 2002

# STATE OF OREGON,
*Appellant,*

*v.*

# ERIC LEE PRESLEY,
*Respondent.*

## 9605-33796; A95653

46 P3d 212

Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Rolf C. Moan, Assistant Attorney General, for appellant.

Sally L. Avera, Public Defender, and Irene B. Taylor, Deputy Public Defender, for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

■ This case is before us on remand from the Oregon Supreme Court. *State v. Presley*, 333 Or 261, 39 P3d 174 (2002). The state appeals from the trial court's grant of defendant's motion to suppress evidence and subsequent dismissal of the case, assigning error to the denial of the motion to suppress.[1] We vacate the suppression order and remand for the trial court to make additional findings.

When this case was before us previously, we held that ORS 136.432 removed the statutory basis for suppressing the evidence. We therefore vacated the suppression order and remanded the case for the court to make findings on issues that it had not previously considered. *State v. Presley*, 163 Or App 410, 988 P2d 918 (1999), *vacated* 333 Or 261, 39 P3d 174 (2002). Thereafter, the Supreme Court held that ORS 136.432 could not constitutionally be applied to events that occurred before its adoption in 1997. *State v. Fugate*, 332 Or 195, 26 P3d 802 (2001). On remand in this case, the issues are whether the trial court correctly held that the officer violated ORS 810.410(3)(b) before asking for consent to search defendant and, if there was no violation, whether defendant consented to the search. If there was a statutory violation, the law as it existed before 1997 required suppression of the evidence without regard to whether defendant consented. Because the Supreme Court clarified the law in that regard after the trial court ruled, and because both that clarification and the issue of consent may require new factual findings, we again remand the case to the trial court.

Defendant was a passenger in a car that a police officer stopped for having an obscured license plate. The driver did not have a driver's license in his possession, and on investigation the officers discovered that there was an outstanding warrant for his arrest. They therefore arrested the driver and

---

[1] The trial court dismissed the case because the state was unable to proceed without the suppressed evidence. Defendant argues that the state's failure to assign error to the dismissal renders the appeal moot. Defendant is incorrect. In *State v. Robinson*, 158 Or App 494, 498, 974 P2d 713 (1999), we explained that, under circumstances such as these, the state need not "separately assign error to the suppression and the dismissal," so long as the order or orders being appealed embody both the suppression and the dismissal.

seized the car as "prisoner's property," intending to have it towed. After they made that decision, an officer told defendant and the other passenger to get out of the car and that they were free to leave. Defendant walked away a step or two and then turned around, told the officer that the owner of the car lived in a nearby house, and asked whether he could get the owner to come and take the car. The officer told defendant that the owner could not have the car and then asked whether defendant "had anything on him that he shouldn't have[.]" According to the officer, defendant said that he did not and offered to let the officer search him, which the officer did.

While the officer was searching defendant, another officer discovered a bag of white powder on the floor board of the car near where defendant had been sitting. He told the officer who was searching defendant to arrest him. The searching officer handcuffed defendant and continued his search, finding the evidence that is the subject of the motion to suppress. He then examined the white powder from the car and was able by looking at it to determine that it was baking powder rather than a controlled substance.

In ruling on defendant's motion to suppress, the trial court found that defendant was stopped when the officer stopped the vehicle in which he was riding, that he did not voluntarily come up to the officer and ask to be searched, and that the arrest was invalid because there was no probable cause to believe that the white powder was a controlled substance. There is evidence in the record to support those findings, and we are bound by them. *See State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). To the degree that the trial court did not make express findings, we normally resolve disputed facts in a way that is consistent with its ultimate conclusion. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

The first issue is whether the officer violated ORS 810.410(3)(b) when he asked defendant whether he had anything "that he shouldn't have." Under the law that controls in this case, such a statutory violation would require suppression of the evidence. ORS 810.410(3)(b) authorizes a police officer to "stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic

violation, identification and issuance of citation." An officer has no authority to restrain a person for any other purpose. Thus, the officer may not inquire into additional crimes or violations unless there is an independent basis for doing so. *State v. Toevs*, 327 Or 525, 531, 964 P2d 1007 (1998). For these purposes, a stop of a driver is a stop of a passenger, and the limitations on the officer's authority therefore apply to passengers as well as to the driver. *State v. Taylor*, 151 Or App 687, 691, 950 P2d 930 (1997), *rev den* 327 Or 432 (1998). A stop continues as long as the person stopped subjectively believes that the officer has restricted or interfered with the person's freedom of movement, provided that that belief is objectively reasonable. What matters is whether the officer has engaged in conduct beyond that accepted in ordinary social intercourse. *Toevs*, 327 Or at 535. We have also held that a traffic stop continues until the person has had a "real time" opportunity to move on. That requires "a distinct temporal 'break in the action' between an officer's indication that a motorist is free to go and any unrelated inquiries." *State v. Hadley*, 146 Or App 166, 172, 932 P2d 1194 (1997).

In this case the trial court found that defendant had not volunteered to be searched and held that the officer did not have the authority to ask defendant to submit to a consensual search. It thus appears to have rejected the officer's assertion that defendant invited the officer to search him in response to the officer's question. It is not clear, however, that the court held that the search was impermissible because the officer did not have the authority to ask for consent or because defendant did not in fact consent. If defendant did not consent, it does not matter whether the stop had ended, because it is not possible to support the search as a consent search. However, if defendant did consent, then there is an issue under *Toevs* whether he subjectively believed that the stop continued during his conversation with the officer and whether that belief was objectively reasonable. If the stop continued, the request violated ORS 810.410(3)(b) and the trial court correctly suppressed the evidence. However, if the stop had ended before the officer sought consent, defendant's consent would make the search permissible.

The evidence on this point is that, after being told that he was free to go, defendant took only a step or two away

from the officer before turning around to ask about finding the owner of the car. The officer responded with an entirely new question, whether defendant possessed something that he should not possess. With the close temporal connection between the stop and the question and the absence of any clear break in the action, it could be that defendant subjectively believed that the stop continued while he spoke with the officer and that that belief was objectively reasonable. Those, however, are factual questions for the trial court to decide in the first instance. Because it made its findings before *Toevs*, we cannot assume that it resolved those issues when it made its original decision. In addition, given its understanding of the applicable law, it is not clear whether the trial court found that defendant in fact consented to the search. We therefore vacate the order of suppression and the dismissal of the action and remand for the trial court to decide the issues that *Toevs* raises and, if necessary, the issue of actual consent. If the trial court finds that the stop continued at the time of the search, or that the stop had ended but defendant did not consent to a search,[2] it shall re-enter the order of suppression; if it finds that the stop had ended and defendant consented, it shall deny the motion to suppress.[3]

Vacated and remanded.

---

[2] The trial court found that defendant did not ask to be searched, but it did not find that defendant failed to consent. Rather, it held only that the officer did not have the authority to ask for consent.

[3] The trial court's findings make it clear that the search is not supportable as a search incident to arrest. The arresting officer testified that he could tell by looking at the white powder that it was not a controlled substance. Based on that testimony, the trial court could conclude that the officer who found the powder did not have an objective basis for believing that it was evidence of a crime. Because it granted the motion to suppress, we must assume that that is what it in fact concluded. As a result, there was not probable cause to arrest defendant. There cannot be a valid search incident to an invalid arrest.